F I L E

FEB 2 9 2012

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

STUART A. JONES,                    )
                                    )
            Plaintiff,              )
                                    )
    v.                              )        1:11cv1148 (LMB/JFA)
                                    )
JOHN SHOOSHAN, et al.,              )
                                    )
            Defendants.             )

## MEMORANDUM OPINION

Before the Court is defendants' motion to dismiss, in which they argue that all of the claims in this lawsuit are either time-barred or should be dismissed for failure to state a claim. For the reasons discussed below, defendants' motion will be granted and this civil action will be dismissed with prejudice as to all defendants except William N. Demas, against whom only the fraud and fiduciary duty counts will go forward.

### I.  BACKGROUND

On October 21, 2011, plaintiff Stuart A. Jones filed a ten count complaint against five individual defendants, John Shooshan, Colin W. Uckert, William N. Demas, Jon E. Hass, Sr., and Jonathan C. Kinney, and six business entities, Jones Lang LaSalle, Inc., Ashton Park Associates, LLC, Ashton Park Associates I, LLC, Ashton Park Associates II, LLC, Ashton Park

Associates III, LLC, and Ashton Park Associates IV, LLC,[1] for claims arising out of a business relationship between Jones and four of the defendants, Hass, Demas, Kinney, and Spaulding & Slye,[2] which relationship was terminated in December 2004.[3]

As alleged in the complaint, plaintiff is a "brownfield redevelopment expert and brownfield developer" who was contacted in 1997 by private parties "seeking to acquire and remediate" land then owned by the Washington Metropolitan Area Transit Authority ("WMATA"). Compl. ¶ 16. In the fall of 1998, plaintiff asked defendant Hass whether he would be interested in "arrang[ing] a group of partners to bid for, acquire, remediate, and re-develop the Site from WMATA." Id. ¶ 17. According to the complaint, in early 1999, plaintiff and defendants Hass, Demas, Kinney, and Spaulding & Slye "formed a partnership" with

---

[1] This Memorandum Opinion will refer to the four Ashton Park Associates LLCs I-IV, formed in 2008, collectively as the "Ashton Park Affiliates" and to Ashton Park Associates as "Ashton Park."

[2] Jones Lang LaSalle, Inc. appears to be the successor-in-interest to Spaulding & Slye. See Compl. ¶ 10. At oral argument on the pending motion, plaintiff agreed to dismiss Jones Lang LaSalle, Inc. Accordingly, Jones Lang LaSalle, Inc. will be dismissed and the Court will not discuss the motion to dismiss as to this defendant.

[3] Subject matter jurisdiction is based on the diversity of the parties; plaintiff is a resident of Texas, and the defendants are residents of Maryland, Virginia, and Florida. Compl. ¶¶ 4-15. The amount in controversy far exceeds the $75,000 jurisdictional requirement.

the intent "to 'carry on' the partnership for the purpose of livelihood or profit, and not merely to carry on some single transaction." Id. ¶ 18.[4] Each of the alleged partners purportedly held a 20% interest in the partnership and was responsible for different elements of the business; plaintiff was in charge of environmental matters and was "to assist in the strategy for bidding and acquisition." Id. ¶¶ 18, 19. Defendant Hass was responsible for financial, Demas for asset management, and Kinney for legal matters. Id. ¶ 19.

On April 27, 1999, defendant Kinney organized Ashton Park Associates, LLC and drew up papers for that entity; however, neither plaintiff nor the other partners signed the documents, and plaintiff contends that "[a]t all times, [he] viewed his business relationship with Defendants Hass, Demas, Kinney, and Spaulding & Slye to be a partnership." Compl. ¶ 20.[5] Plaintiff alleges that between 1999 and 2002, he undertook extensive environmental work on behalf of the alleged partnership, culminating in a February 20, 2003 partners meeting in which

---

[4] No written evidence of this partnership was attached to either the complaint or any of the briefs addressing the pending motion; however, during oral argument, plaintiff's counsel stated that he had seen a memorandum of understanding which set out the parameters of the alleged partnership.

[5] Plaintiff alleges that all of the partners referred to themselves in written and oral communications as partners, but again, no documentation of such communications is attached to the complaint or the pleadings addressing the motion to dismiss.

plaintiff provided the original partners a copy of the Virginia Department of Environmental Quality final closure/no further action letter, which indicated that the environmental remediation of the site was complete and the site was fit to be commercially developed.  Id. ¶ 24.  In addition to his environmental efforts, plaintiff claims that he "assisted strategically in (a) the initial bid process, (b) the final presentation to WMATA, (c) the selection of the partnership by WMATA, and ultimately, (d) the agreement with WMATA."  Id. Plaintiff also contends that in the spring of 2003, he "endeavored to assist with the acquisition of the Shell Gas Station located on the Site," which "became part of the assemblage that now supports the ongoing development by the Defendants."  Id. ¶ 25.

The complaint goes on to allege that on December 11, 2003, defendant Demas wrote a "capital contribution cash call private letter" to plaintiff, in which he "demand[ed]" that plaintiff make an $8,000 capital contribution by December 18, 2003.[6] Compl. ¶ 26.  Plaintiff contends without explanation that he "was not required to make such a contribution."  Id.  Plaintiff responded by letter on December 18, 2003, stating that he "was taken by surprise by the suddenness and inexplicable urgency

---

[6] Neither party has included any documentation of these communications with its pleadings.

4

of...[Defendant Demas']...demand," and contended that Demas "did not have the right to terminate" plaintiff's interest in the partnership. Id. ¶ 27 (alterations in original). The complaint alleges that plaintiff continued to work on behalf of the partnership throughout 2004, but on December 17, 2004, defendant Demas wrote plaintiff a letter "purport[ing] to unilaterally terminate Plaintiff's interest in the partnership," due to plaintiff's refusal to make the capital contribution requested in the December 2003 letter. Id. ¶ 28. Plaintiff alleges that Demas' reliance on the capital contribution issue was a pretext for defendants' true desire to "not have to compensate Plaintiff for his environmental work." Id.

In March 2005, defendant Demas phoned plaintiff and stated: "We lost it....Our deal with WMATA is dead....The deal is not going through....The deal is over....WMATA does not want to deal with us anymore." Compl. ¶ 29. Plaintiff characterizes Demas' statements as "emphatic" and contends that Demas "was emotionally choked up and disturbed" during the conversation. Id. Plaintiff alleges that, at the time of this conversation, Demas knew that the deal was "not 'dead'...and that WMATA was still dealing with the partnership." Id. Plaintiff contends that Demas intentionally misled him so that plaintiff would not contest his December 2004 termination from the alleged partnership. Id. ¶ 29. Plaintiff further alleges

that his conversation with Demas had a "profound impact" on him, in that he reasonably relied on Demas' statements that the deal was dead and consequently did not contest his termination or follow any activity at the site.  Id. ¶ 30.

Although the complaint alleges that the deal was not "dead" at the time of the March 2005 phone call, it was not until May 2, 2011 when plaintiff learned "that (a) the deal with WMATA actually went through, (b) the Spaulding & Slye partners were paid off by the Defendants, and (c) the Defendants went forward with the original plan for re-development of the Site (presented to WMATA in 1999), which Plaintiff participated and assisted strategically with."  Compl. ¶ 33.  Plaintiff also learned from Arlington County property records that WMATA had sold three parcels of land to defendants, one sale occurring on October 22, 2009 and the other two on December 16, 2010.  Lastly, plaintiff discovered that defendants and Landesbank entered into a $98 million construction loan agreement on January 12, 2011 and that defendants had entered into a long-term lease and long-term loan with two other entities.  Id. ¶ 34.

Plaintiff filed suit on October 21, 2011, contending that he was wrongfully terminated from the WMATA project in 2004, that the defendants committed fraud by informing him that the WMATA deal was dead knowing it was not and continuing to conceal the truth, and that they conspired to injure plaintiff's

6

business by hiding this information.  As a result, plaintiff
claims he was not compensated for the work he contributed to the
WMATA project and was cut out of lucrative deals and his
rightful partnership interest.  The ten counts alleged in the
complaint are: (1) Actual fraud; (2) Constructive fraud;
(3) Fraudulent concealment; (4) Statutory conspiracy; (5) Common
law conspiracy; (6) Breach of fiduciary duty; (7) Breach of
contract; (8) Breach of implied-in-law contract; (9) Unjust
enrichment[7]; and (10) Accounting.

   Other than the accounting claim, the complaint is not clear
as to which defendants are accused in each count, but in the
prayer for relief, plaintiff seeks all categories of damages
against all defendants.  Because Counts 1 and 2 (actual and
constructive fraud) are based exclusively on Demas' alleged
misrepresentations made in March of 2005, the Court construes
these claims as brought solely against defendant Demas, even
though in the prayer for relief, plaintiff seeks punitive
damages against all defendants based on Count I.  The Court also
construes the breach of express contract claim (Count 7) as

---

[7] In his claims for unjust enrichment and breach of implied
contract, plaintiff seeks compensation for the environmental
work he did on behalf of the original alleged partnership, which
work concluded in 2003.  Compl. ¶¶ 78, 84.  At oral argument,
plaintiff's counsel conceded that his client is not entitled to
such compensation.  Accordingly, the unjust enrichment and
breach of implied contract claims (Counts 8 and 9) will be
dismissed without further discussion.

brought only against plaintiff's original alleged partners,
defendants Demas, Hass, Kinney, and Spaulding & Slye (now Jones
Lang LaSalle, Inc.), as neither Ashton Park nor any of the
Ashton Park Affiliates are described as parties to any initial
contractual arrangement. Plaintiff seeks an accounting (Count
10) as to Ashton Park and the Ashton Park Affiliates defendants
only. The Court construes the remaining counts of the complaint
as brought against all defendants. Plaintiff seeks to be
reinstated to the partnership; $25 million in actual damages
against all defendants; treble damages of $75 million against
all defendants; $350,000 in punitive damages against all
defendants; an accounting; attorneys' fees and costs; and pre-
and post-judgment interest.

## II.  STANDARD OF REVIEW

In evaluating a motion to dismiss under Fed. R. Civ. P.
12(b)(6), the Court must accept all of the complaint's well-
pleaded allegations as true and view them in a light most
favorable to the plaintiff. Smith v. Sydnor, 184 F.3d 356, 361
(4th Cir. 1999). However, that requirement applies only to
facts, not to legal conclusions. Ashcroft v. Iqbal, 129 S. Ct.
1937, 1949 (2009). In addition, "if the well-pleaded facts do
not permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged—but it has not 'show[n]'—
'that the pleader is entitled to relief.'" Id. at 1950 (citing

8

Fed. R. Civ. P. 8). "Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Accordingly, a party must "nudge[] their claims across the line from conceivable to plausible" to survive a Rule 12(b)(6) motion to dismiss. Id. at 570.

Fed. R. Civ. P. 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." A plaintiff must therefore specify "the time, place, and contents of the false representations, as well as the identity of the party making the misrepresentation and what was obtained by making the misrepresentation." Brown v. HSBC Mortg. Corp., 2011 U.S. Dist. LEXIS 80943, at *3 (E.D. Va. July 22, 2011) (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776; 784 (4th Cir. 1999)) (internal quotation marks omitted).

### III. DISCUSSION

A. Claims Against Post-Termination Defendants

All claims against defendants Shooshan, Uckert, Ashton Park, and the Ashton Park Affiliates will be dismissed, because plaintiff has not alleged that any of these defendants was involved with the plaintiff or the alleged partnership when

plaintiff claims to have been a partner conducting work on its behalf.[8]  Accordingly, these defendants could not have been parties to any contractual partnership agreement or employment arrangement with plaintiff, and thus cannot be liable for breaching a contractual obligation.  Similarly, they owed no fiduciary duty to plaintiff, as plaintiff has not alleged that he was ever a partner to whom they owed duties of loyalty and care.

Moreover, plaintiff has wholly failed to plead a plausible claim for relief against these defendants for fraud, fraudulent concealment, or conspiracy.  The complaint's only allegations of actual fraud relate to Demas' March 2005 statements.  Plaintiff has pleaded no facts suggesting that the post-termination defendants took action to conceal their business operations or relationship with plaintiff's former partners or that they conspired to cut plaintiff out of the future deals; rather, he appears to suggest that these defendants are liable due to their association with the other defendants, which does not establish a plausible claim to relief.

---

[8] Defendants Shooshan and Uckert entered the WMATA project in March 2005.  Compl. ¶ 31.  Although plaintiff alleges that Ashton Park was organized in 1999 by defendant Kinney, he also alleges that he never signed any papers associated with that LLC.  Id. ¶ 20.  The Ashton Park Affiliates were formed after plaintiff was terminated from the WMATA project.  See Defs.' Mem. Ex. 14 (showing that Ashton Park Associates I, II, III, and IV were formed in October of 2008).

Plaintiff argues that he bases his claims against these defendants on the contention that they are necessary to afford complete relief for his injuries.  Plaintiff relies on Greenfeld v. Stitely, 2007 Va. Cir. LEXIS 7 (Fairfax Cir. Ct. Jan. 5, 2007), to support his claim that Ashton Park and the Ashton Park Affiliates should remain in this action, despite plaintiff's lack of involvement with them.  In Greenfeld, a Virginia state trial court held that a PLLC "became an agent of [defendants'] conspiracy" and was thus properly a "separate party to the conspiracy because it became the recipient and repository of the assets and value of" a dissembled partnership.  Id. at *31. Defendants correctly respond that, in contrast to Greenfeld, plaintiff's complaint does not provide any plausible indication that Ashton Park or the Ashton Park Affiliates acted as agents of the alleged conspiracy, as plaintiff has pleaded no specific factual allegations regarding these entities.  Moreover, unlike in Greenfeld, the four Ashton Park Affiliates were not in existence until years after plaintiff's termination and Demas' allegedly fraudulent March 2005 statements.

For these reasons, all of plaintiff's claims against defendants Shooshan, Uckert, Ashton Park, and the Ashton Park Affiliates will be dismissed.

B.  <u>Statutes of Limitations</u>

Defendants vigorously argue that all of plaintiff's claims are barred by the applicable statutes of limitations, and that plaintiff cannot plausibly argue that his reliance on a single alleged misrepresentation by one of the defendants excuses his nearly seven-year delay in filing suit. Plaintiff responds that none of his causes of action accrued until May 2011, when he learned that the WMATA deal had gone through and he "knew that he had been hurt." Invoking the "discovery rule" for all of his claims, plaintiff maintains that his claims are not time-barred because the statutes of limitations did not begin to run until he discovered the full extent of his injuries in May 2011.

The Virginia Code enumerates the causes of action to which the discovery rule applies. Relevant to this motion, Va. Code Ann. § 8.01-249(1) provides in pertinent part that a cause of action for fraud accrues "when such fraud...is discovered or by the exercise of due diligence reasonably should have been discovered." Otherwise, "the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property, when the breach of contract occurs in actions ex contractu and not when the resulting damage is discovered, except where the relief sought is solely equitable...." Va. Code Ann. § 8.01-230 (emphasis added).

Defendants' statute of limitations arguments will be evaluated against this statutory background.

### 1. Breach of Contract (Count 7)

In Count 7, plaintiff pleads "[i]n the alternative" that he, along with defendants Demas, Hass, Kinney, and Spaulding & Slye, were members of Ashton Park Associates, LLC and that the "Defendant partners breached their obligations to Plaintiff as a member of Ashton Park Associates, LLC by unlawfully terminating Plaintiff's interest in the limited liability company." Compl. ¶ 19. Elsewhere in the complaint, however, plaintiff specifically states that neither he nor his alleged partners "ever signed any documents to become a member" of the LLC, and he "[a]t all times...viewed his business relationship...to be a partnership." Id. ¶ 20. Furthermore, it is not clear whether plaintiff claims a breach of a written or oral contract in Count 7, although the complaint never mentions a written agreement signed by the "partners." Plaintiff does not clarify this point in his opposition. Because the breach of contract claim is so imprecisely pleaded and the basis for this claim is completely unclear, it does not meet the pleading standards of Fed. R. Civ. P. 8, Twombly, and Iqbal.

Even putting these deficiencies aside, any claim for breach of contract based on plaintiff's termination from his original business arrangement with Demas, Hass, Kinney, and Spaulding &

Slye is clearly time-barred.  Under Virginia law, a claim for breach of an oral contract must be brought within three years of the date of the breach, see Va. Code Ann. §§ 8.01-230, 8.01-246(4).  A claim for breach of a written contract must be brought within five years of the breach, see Va. Code Ann. §§ 8.01-230, 8.01-246(2).  As discussed above, in Virginia the statute of limitations for breach of contract begins to run at the time of the breach, not when the resulting damage is discovered.  The complaint alleges that a contract was breached when plaintiff was terminated on December 17, 2004.  Because plaintiff filed his complaint on October 21, 2011, any breach of contract claim, regardless of whether the contract was oral or written, is untimely under both the three and five-year statutes of limitations.

Plaintiff generally argues that his cause of action for breach of contract accrued in May 2011 when he learned that the WMATA deal had gone through and therefore that he had been hurt.  Plaintiff relies on Nasim v. Warden, Md. House of Corrs., 64 F.3d 951 (4th Cir. 1996), in which the Fourth Circuit held that "[u]nder federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."  Id. at 955.  Nasim does not help the plaintiff because it involved a federal cause of action brought under 42 U.S.C. § 1983 rather

14

than a state law cause of action.  Although the state statute of limitations is used for § 1983 claims, the rules for accrual of the cause of action are governed by federal law, and the Nasim court made clear that "a federal cause of action accrues upon inquiry notice."  Id.[9]  All of plaintiff's claims in this action are purely state law claims brought under the Court's diversity jurisdiction and, accordingly, state law statutes of limitations and state accrual rules apply.  See Va. Imps., Inc. v. Kirin Brewery of Am., LLC, 296 F. Supp. 2d 691, 699 (E.D. Va. 2003) ("State law governs the existence and interpretation of any statute of limitation in a federal diversity action.").  In addition to the clear language of the Virginia statute, the Virginia Supreme Court has consistently adhered to "the general rule that the applicable period of limitation begins to run from the moment the cause of action arises rather than from the time of discovery of injury or damage, and...that difficulty in ascertaining the existence of a cause of action is irrelevant." Va. Military Inst. v. King, 217 Va. 751, 759 (1977).

In the alternative, plaintiff argues that he did not suffer harm for which he could recover until the WMATA deal went through in October 2009, and if his claims are considered to have accrued on that date, they are timely.  That argument

---

[9] Moreover, Nasim relied on United States v. Kubrick, 444 U.S. 111, 122-24 (1979), which also addressed a federal claim, the Federal Tort Claims Act.

contradicts the allegations in the complaint, which specify that the breach at issue was plaintiff's unlawful termination in December 2004, at which point he was cut off from all future profits from the venture.  Compl. ¶ 71.  Under long-standing Virginia law,

> where an injury, though slight, is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy therefor the statute of limitations attaches at once. It is not material that all the damages resulting from the act should have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date.

Richmond Redevelopment & Hous. Auth. v. Laburnum Constr. Corp., 195 Va. 827, 839 (1954) (citations and alterations omitted). For these reasons, defendants' motion to dismiss Count 7 will be granted, as plaintiff's breach of contract claim is time-barred.

### 2. Statutory/Common Law Conspiracy (Counts 4 and 5)

The parties agree that the statute of limitations for plaintiff's statutory conspiracy claim is five years, and plaintiff maintains that the common law conspiracy count is subject to a two-year statute of limitations.  Again, the parties dispute whether these causes of action accrued when plaintiff discovered in May 2011 that the defendants had secured the WMATA deal or, as defendants contend, when plaintiff was terminated in December 2004.  The Fourth Circuit, quoting the Virginia Supreme Court, has held contrary to plaintiff's

16

contention that the cause of action for conspiracy accrues at the time he "first suffered any damages resulting from the acts committed in furtherance of the conspiracy." Detrick v. Panalpina, Inc., 108 F.3d 529, 543 (4th Cir. 1997). Plaintiff was clearly aware of his termination from the WMATA project in 2004, and it is from that event that any injury arises. Therefore, the statute of limitations began to run at that time. For these reasons, plaintiff's conspiracy claims are time-barred as to all defendants.[10]

### 3. Breach of Fiduciary Duty (Count 6)

The complaint alleges that defendant Demas breached his fiduciary duty to plaintiff by informing him in March 2005 that the WMATA deal was dead. Compl. ¶ 66(a). Plaintiff also alleges that all defendants continued to breach their fiduciary duties by not disclosing the various WMATA deals into which they entered over the years. The parties agree that plaintiff's breach of fiduciary duty claim (Count 6) is subject to a two-year statute of limitations under Va. Code Ann. § 8.01-248. See also Broyhill v. Bank of Am., N.A., 2010 U.S. Dist. LEXIS 106766, at *10 (E.D. Va. Oct. 6, 2010). The parties dispute

---

[10] Demas is the only defendant as to whom the plaintiff has alleged any misconduct that could possibly give rise to equitable estoppel; however, a conspiracy requires the involvement of at least two co-conspirators. See Va. Code Ann. § 18.2-499, et seq. Therefore, because the conspiracy claims against all other defendants will be dismissed, the conspiracy claims against Demas must also be dismissed.

whether the discovery rule applies to such claims in light of competing lines of authority.

In 1988, the Fourth Circuit held that the statute of limitations for a breach of fiduciary duty claim begins to run when the plaintiff discovers the breach.  Int'l Surplus Lines Ins. Co. v. Marsh & McLennan, Inc., 838 F.2d 124, 128 (4th Cir. 1988).  In so holding, the court relied on the statutory section providing for the discovery rule in actions for fraud.  Id. However, the Virginia Code explicitly lays out the causes of action subject to the discovery rule, and breach of fiduciary duty is not an enumerated category.  Since the International Surplus Lines decision, Virginia courts have repudiated the discovery rule for breach of fiduciary duty claims, and the majority of the federal courts in Virginia have followed suit. See, e.g., Informatics Applications Grp., Inc. v. Shkolnikov, 2011 U.S. Dist. LEXIS 148357 (E.D. Va. Dec. 27, 2011); Tabler v. Litton Loan Servicing, LP, 2009 U.S. Dist. LEXIS 70768 (E.D. Va. Aug. 12, 2009) (holding that breach of fiduciary duty claim accrues at the time the injury occurred); Katz v. Holland & Knight LLP, 2009 U.S. Dist. LEXIS 10721 (E.D. Va. Feb. 12, 2009) (finding that breach of fiduciary duty claim accrues upon date of breach, not date of discovery); Rossmann v. Lazarus, 2008 U.S. Dist. LEXIS 68408 (E.D. Va. Sept. 3, 2008) (declining to apply discovery rule); Smith v. CNA Fin. Corp., 2003 U.S. Dist.

LEXIS 28240 (W.D. Va. Nov. 26, 2003) (reviewing cases and
rejecting discovery rule); Goldstein v. Malcolm G. Fries &
Assocs., 72 F. Supp. 2d 620 (E.D. Va. 1999) (declining to follow
International Surplus Lines reasoning given Virginia case law
refuting discovery rule); Pathek v. Trivedi, 61 Va. Cir. 572,
576 (Chesterfield Cir. Ct. 2003) (declining to apply discovery
rule); Professionals I, Inc. v. Pathak, 47 Va. Cir. 476 (Fairfax
Cir. Ct. 1998) (holding that discovery rule does not apply to
breach of fiduciary duty claims).  But see Russell v. Gennari,
2007 U.S. Dist. LEXIS 83771 (E.D. Va. Nov. 8, 2007), aff'd, 284
F. App'x 98 (4th Cir. 2008) (applying discovery rule).  In light
of the weight of the precedent, plaintiff's claim for breach of
fiduciary duty accrued at the time of the breach, not at the
time plaintiff discovered the breach.

Plaintiff has not specifically alleged that any defendant
other than Demas made any statement or engaged in any conduct
that could constitute a breach of fiduciary duty.  As to Demas,
the only breach specifically alleged is the purported
misrepresentation he made in March 2005, and as such, a
resulting claim for breach of fiduciary duty would be time-
barred unless subject to equitable estoppel, as discussed
further below.  For these reasons, the breach of fiduciary duty
claims against all defendants except for Demas will be
dismissed.

C.  The Fraud Counts (Counts 1, 2, and 3)

     In Counts 1 and 2, plaintiff alleges actual and
constructive fraud based on Demas' March 2005 statements that
the WMATA deal was dead, and in Count 3, he alleges fraudulent
concealment based on the defendants' failure to inform him that
the WMATA project went forward and of the subsequent related
deals.

     "Fraud allegations ought to specify the time, place,
speaker, and content of the alleged misrepresentations."
Hirschler v. GMD Inv. Ltd. P'ship, 1990 U.S. Dist. LEXIS 20885,
at *31 (E.D. Va. Dec. 18, 1990) (quoting Di Vittorio v. Equidyne
Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1986)).
Plaintiff has not alleged a single specific example of
fraudulent conduct by any defendant other than Demas.  In his
allegations of actual and constructive fraud, plaintiff focuses
exclusively on Demas' March 2005 statements.  See Compl. ¶¶ 40,
43, 45.  In Count 3, plaintiff makes only vague and conclusory
allegations that any of the other defendants fraudulently
concealed material facts, totally failing to specify statements
or conduct to support his claim.  Because "[g]uilt by
association is not sufficient to meet the strict requirements of
Rule 9(b)" and because plaintiff fails to identify specific acts
of concealment or details of a fraudulent scheme, Count 3 will
be dismissed for failure to state a claim as to all defendants

other than Demas.  Hirschler, 1990 U.S. Dist. LEXIS 20885, at
*31; see also Tabler v. Litton Loan Servicing, LP, 2009 U.S.
Dist. LEXIS 70768, at *13 (E.D. Va. Aug. 12, 2009) (holding that
"[m]erely alleging Defendants 'intentionally suppressed and
concealed' a kickback" was insufficient to meet Rule 9(b)
standard).

As to Demas, defendants argue that the fraud claims are
barred by the two-year statute of limitations for fraud under
Va. Code Ann. § 8.01-243(A).  Va. Code Ann. § 8.01-249 provides,
in pertinent part, that a cause of action for fraud accrues when
the "fraud...is discovered or by the exercise of due diligence
reasonably should have been discovered."  The plaintiff bears
the burden of showing that he acted with due diligence.
Informatics Applications Grp., Inc. v. Shkolnikov, 2011 U.S.
Dist. LEXIS 148357, at *60 (E.D. Va. Dec. 27, 2011).

In response to plaintiff's argument that his fraud claims
accrued in May 2011, when he learned that the WMATA deal had
gone through, defendants ask the Court to take judicial notice
of a series of public documents, including WMATA Board of
Directors meeting minutes and agendas and press releases, which
defendants assert put the plaintiff on notice well before May
2011 that the real estate deal was going forward.  Over
plaintiff's objection, the Court has taken judicial notice of
the documents proffered by defendants.  The existence of these

public documents does not answer the question whether plaintiff exercised due diligence, which is a question of fact, "not measured by any absolute standard, but depending on the relative facts of the special case." Va. Imps., Inc. v. Brewery of Am., LLC, 296 F. Supp. 2d 691, 699 (E.D. Va. 2003) (citation omitted). Whether these records were reasonably accessible to plaintiff at the time, and whether he acted with the requisite diligence in monitoring the WMATA project, are factual questions that cannot be resolved at the motion to dismiss stage. Accordingly, defendants' motion will be denied as to the fraud claims against Demas but granted as to all other defendants.

D.  Equitable Estoppel

Plaintiff contends that, even if his claims were not brought within the relevant statutory periods, defendants should be estopped from raising a statute of limitations defense under the doctrine of equitable estoppel, which "bars a statute of limitations defense by a defendant who, by his own conduct, lulls another into a false security." Lamers v. Org. Strategies, Inc., 2008 U.S. Dist. LEXIS 23037, at *4-5 (E.D. Va. Mar. 24, 2008) (quoting Datastaff Tech. Grp., Inc. v. Centex Constr. Co., 528 F. Supp. 2d 587, 593 (E.D. Va. 2007)). For equitable estoppel to apply, a party must show

> (1) concealment or misrepresentation of a material fact;
> (2) that the misrepresentation was made with knowledge of
> the fact; (3) that the other party was ignorant of the

22

> truth; (4) that the representation was made with the intention that the other party rely on it; (5) that the other party was induced to act on it; and (6) that the party was harmed.

Neal v. Stryker Corp., 2011 U.S. Dist. LEXIS 23037, at *8-9

(E.D. Va. Mar. 8, 2011). Plaintiff must also demonstrate that

his reliance on a defendant's statement was reasonable and "that

he diligently pursued his legal claims after the cessation of

defendant's misrepresentations." Lamers, 2008 U.S. Dist. LEXIS

23037, at *5-6. At the motion to dismiss stage, the plaintiff

has the burden of pleading facts that would support a finding of

equitable estoppel. Neal, 2011 U.S. Dist. LEXIS 23037, at *9.

Although plaintiff focuses on various allegations in the

complaint which he asserts establish all of the elements of

equitable estoppel, at best these statements only implicate

defendant Demas. See Pl.'s Opp'n at 16-18. Again, the

complaint is absolutely devoid of factual allegations suggesting

misconduct by any defendant other than Demas and, as such,

equitable estoppel will not apply to any of the claims brought

against the other defendants.

Moreover, the single allegation of fraud against Demas is

insufficient to establish that equitable estoppel should apply

to the breach of contract claim. The purported breach of

contract occurred in December 2004 when Demas told plaintiff

that he was terminated from the project. As defendants

correctly argue, Demas' March 2005 statement about the WMATA
deal being dead does not "purport to undo" plaintiff's
termination.  Therefore, irrespective of the March 2005
statements, plaintiff was injured when his interest in the WMATA
project was terminated in December 2004.  At that point,
plaintiff knew his involvement in the WMATA project had been
terminated and the time in which he needed to pursue a breach of
contract claim began to run.  For these reasons, plaintiff
cannot rely on equitable estoppel to save his breach of contract
claims against any defendant, including Demas, and those claims
will be dismissed as to all defendants as time-barred.

Because factual development is necessary to determine
whether plaintiff's fraud and breach of fiduciary duty claims
against Demas are subject to equitable estoppel, and
particularly whether plaintiff exercised due diligence, these
claims will not be dismissed as to Demas.

Plaintiff briefly argues in a footnote that his claims
should be subject to equitable tolling under Va. Code Ann.
§ 8.01-229(D), which tolls the statute of limitations "[w]hen
the filing of an action is obstructed by a defendant's...using
any other direct or indirect means to obstruct the filing of an
action...."  There is no allegation in the complaint that any
defendant affirmatively obstructed plaintiff from filing suit
either at the time he was terminated in December 2004 or

thereafter.  Accordingly, plaintiff's claims are not subject to equitable tolling.[11]

### IV.  CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss will be granted as to all counts against all defendants except for Counts 1, 2, 3, and 6 for fraud and breach of fiduciary duty, which will proceed against defendant Demas.  An appropriate Order will issue along with this Memorandum Opinion.

Entered this 29th day of February, 2012.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

---

[11] Defendants raise a series of other grounds on which they argue that the Court can dismiss the various counts in plaintiff's complaint, including that the economic loss doctrine bars the fraud claims and that the intracorporate immunity doctrine precludes relief on the conspiracy counts.  Because the Court finds that all counts against defendants who were not original members of the alleged partnership of which plaintiff claims he was a part must be dismissed and because all other claims (except for the fraud and breach of fiduciary duty claims against Demas) are time-barred, the Court declines to address defendants' other arguments.